Whenever you're ready, Mr. Pally. If it pleases the Court, my name is Robert Pally and I'm counsel for the appellants in this matter. The principal issue before the Court, we believe at this time, is the implication of mitigation as it's applied to the U.S. Copyright Act and has it served in this case to eliminate the award of statutory damages. Section… Mr. Pally, in the jury, to that point, in the jury instructions with respect to instructing the jury about whether to locate the amount of statutory damage between 750 and 150,000, the Court instructed the jury to consider some factors. And the last one, I'm looking at the jury instructions, page 8, the last one is, the jury should consider, quote, the actions taken by plaintiffs to mitigate, lessen, or avoid their damages. Now, is it your position that that instruction was erroneous? Your Honor, that is not part of our appeal at this time. Okay. You're not appealing that instruction. No, no. We're appealing a different part of the instruction. We're actually appealing the application of mitigation as a matter of law to the award of statutory damages. But you don't contest that that was — you don't say that that was incorrect to instruct the jury, that that's a factor they could consider with respect to the amount of statutory damages per infringement? We don't. We didn't, as a matter of our appeal, include that. Jack. Thank you. That position. Thank you. I'm going to piggyback on that, because that's sort of where I got confused. Is your argument that the judge's instructions were erroneous as a matter of law, or is it your argument the instructions and the verdict form was inconsistent with each other? Our argument is actually that the Court's decision where it applied mitigation to the jury's finding of statutory damages within the prescribed range was the error. So it is a factor to determine — it is a relevant — or you aren't appealing that it's an appropriate factor to decide within the range, but you are saying that it can never be a complete affirmative defense. Is that — is that right, or am I not getting it right?  That's the part of our appeal. We — you know, I — we didn't put in our argument the fact that the instructions included the mitigation as a factor, but we do find it telling that it was presented to the jury, and the jury, in considering that, still awarded within the range of $15,000 per work. But we're not appealing that jury instruction. Because I was trying to trace, I mean, very accomplished counsel throughout this entire pretrial trial period, it seems like the issue came up before trial and then in the Rule 59 motion after trial. So you objected, and you preserved your objection. Each time the district court, if I'm correct, but correct me if I'm wrong, cited separate law to support its view that mitigation is a complete defense. So it cited Judge Ellison's decision in interplay before the trial, and then in response to your Rule 59 motion, it cited the Malibu media case. Both of those cite an earlier district court opinion, Tingley. Your position is that body of district court law that isn't sort of at all explicated is wrong or was adjusted because of Petrella or what? You know, our argument at the time was that body is wrong. And that body of decisions typically treated at the motion-to-dismiss stage or summary judgment, that because actual damages can be a component of statutory damages, they weren't prepared to let the mitigation affirmative defense go. But it never was applied as it was in this circumstance, where the application of mitigation resulted in the complete, complete removal of all damages outside the prescribed statutory range to zero for some 1,646 admitted cases of willful infringement. So it's that application. During the jury's deliberation, the jury inquired about the application of mitigation. And the judge said in response that it's a matter of law, that we're going to — I'll decide how mitigation should be applied to your findings. Well, so let me try to understand it a different way. You said you weren't appealing that factor that uses the word mitigation in the jury instructions, but later in the jury instructions, the jury — the judge tells the jury, if you determine defendants are liable and plaintiffs have suffered damages, plaintiffs may not recover for any item of damage that they could have avoided through reasonable effort. Now, you do say, as I understand it, that that is an incorrect instruction, or do you? No. We believe that the application of that in the jury interrogatories was incorrect. Right. Because, I mean, as I understand the jury notes, they're keying off of that instruction and saying, well, we're going to find — if we find all this infringement, then we're going to find that they could have avoided what? Most of it, right? Yes, 1,607, all but, I believe, 39. Okay. And that's — that's where you say the error is? That's where we believe the error was. You used that instruction and that response from the jury to avoid the infringement of so many of the acts? Correct. And none of the — No, go ahead. You go ahead. Sorry. None of the case laws cited in the lineage found ever that mitigation was a complete — completely is allowed to defeat the statutory purposes of awarding between $750,000 and $150,000. In fact, there is some authority from the Tenth Circuit that we've cited in our briefs where the courts have found that mitigation can't apply to generally the — the Tenth Circuit direction is according to other statutes and looks to ERISA, but where there's other components of statutory damages, such as the penalty. And in this circumstance, one of the clear directives of the Copyright Act is to allow statutory damages to address the issue of deterrence. And so in this situation, deterrence is a similar-like penalty. And courts, district courts within the Tenth Circuit, and actually there's a body of malleable media cases that indicate that you cannot apply mitigation when statutory damages are sought. There, you saw in their brief, they assert that the Copyright Act — the statutory damages are primarily remedial. They — they did assert that, but I think that's a limited — Do you agree with that, that they're primarily remedial? No. I think the statutory damages are both remedial to compensate and also to deter. I think the — if you look at the judicial history, the Supreme Court's treatment in Woolworth, FDW Woolworth, they talk about the deterrence purpose of the statute. In fact, much of the legislative history, as over time, has increased this range of statutory damages, is really to address the need to make sure it had the deterrent purpose. Regardless of whether there were consequential damages at all? Yes. I mean, in many situations, there have been holdings, and the scholars have commented, that statutory — I mean, excuse me — damages are not even necessarily an element of statutory damages. If you're right on the law, then would their entire four-day trial defense of your client didn't show due diligence being admissible? Is it not even — is it not relevant to anything? You know, I think the issue of mitigation wouldn't be admissible, especially as it's been applied here. Their arguments for mitigation consisted of two steps, which I think also principally conflict with the statute. It focused on failure to warn. I mean, they admitted to knowingly infringe the works. And they basically said, but we didn't really know that Congress had set an award of damages for $750,000 to $150,000. And so if we were warned of that factor, while we knew what we were doing was willful infringement, they actually stipulated that before deliberation to the jury. We would have never done what we did. So that creates a problem. And also they've argued that we should have instituted technology solely based on attorney argument that would have enabled us to detect the infringement sooner and given them a greater warning that would have resulted in them ceasing their infringement. However, that creates burdens also that conflict with the Copyright Act. The Copyright Act — Well, so I hear what you're saying there. But to go back to the factors that the judge instructed the jury that it could consider in setting the statutory damage amount, those factors are quite broad. And as I read them, would encompass all this evidence that Judge Higginson just referred to. I mean, the court instructed the jury that it consider not only the mitigate lesson or avoid damages, but also the circumstances of the infringement, whether defendants intentionally infringed, deterrence of future infringement, et cetera, et cetera, et cetera. Why wouldn't all that evidence be relevant so that the jury could say, well, we are finding infringement, but we have to set amount of statutory damages. In this case, as I recall, what did the jury set it at, 15,000? Okay. So imagine the jury is no longer instructed it could find complete avoidance, but it's still instructed it could find — it can set an amount. And now the jury does something different. It says, well, okay, now we can't — you know, now — now certain infringements are not completely avoidable. We're going to set the damages quite — quite a lot lower. Isn't — isn't that a possibility if — if, say, we remanded for a new trial? Yeah, it is a possibility, but the jury was — was given that option. It — it fully looked at all the arguments briefed by both the parties regarding the actions and the steps taken by both parties, and still in view of that, awarded $15,000 per work, considering the mitigation arguments. The conflict, we believe, comes when now the mitigation is taken to totally nullify that award. Right. But look at the jury. I mean, the jury note number one is — is pretty revealing to me. I know you know what they said. It's a little bit hard to interpret, but the jury essentially says, will they pay less if we say could have stopped 1,607 infringements? And, of course, the Court didn't answer that question. Yes. But you can see where the jury's thinking was going. I appreciate, but I think, again, as part of our appeal, the obligation of mitigation is an error. I understand that. Yeah. The statute says that the only thing that an applicant or a copyright holder needs to do to obtain an award of statutory damages is to timely register its work under 544 — within a prescribed period of time. And that's it. And it's not that Congress ignored the issue of mitigation. They specifically addressed, in certain sections, when that statutory range could be changed. Under 401D — Assume for a second we agree with you that the jury should not have had that choice to say, well, they could have avoided 1,607. The jury should not have had that choice, should not have instructed. What's the remedy? You know, the remedy would be to instruct or give guidance to the Court to revisit the order or the verdict and not including mitigation as a complete bar. So a new trial? Awards. What's that? New trial. I don't think it's a new trial, Your Honor. Why not? I think the verdict, the jury got a chance to consider mitigation and reached an award of $15,000. Yeah, but don't you think the note and the way that the jury questions are structured show that the jury was — if we agree with you that it was error, doesn't it show that they were led astray in their deliberations by this error? And we can't really have confidence that, well, we just say, no, it's 15,000. Your Honor, it's possible that the instructions did result in that confusion, but I'm not certain, really, to what went into the minds of the jury. Sure. So, again, the application of mitigation, one, I think, defeated the award that's required, and the Act tellingly prescribes if you have notice, even for an innocent infringer, if you have notice, the defense in mitigating statutory damages cannot apply. And under statute, the award, even for innocent infringement, still requires a payment, but the lower range of statutory damages is lowered from $750 to $200. So I think courts have long held that the statutory purposes cannot be undermined by equitable doctrines. I think Petrella gave guidance to that on a similar situation looking to Latches when Latches was found to be an equitable argument that completely defeated — I mean, Petrella said Latches can't apply to the three-year window, right? It did. And I think — It said some other — it said some other — it qualified that somewhat, and it said Estoppel could apply, but it said Latches can't apply in the three-year window to totally knock out claims, because that's contrary to Congress's intent as expressed in the statute. Now, how does that — translate that to this? You know, I think, absolutely. I think the — the idea in New Meridian and Petrella was that the equitable doctrine the Court looked to, to Latches, totally defeated the purposes of the Statutory Act. And as it — And Petrella was the three-year window, totally inconsistent with Latches. What's the — what's the aspect of the Copyright Act here that's inconsistent with mitigation? The — the Copyright Act requires an award between the range, says, unless specified under the title, an award for an individual found liable for copyright infringement must be between $750,000 and $150,000. And the only mitigation aspect that they address is in the case of innocent infringement, which doesn't apply here, but where it lowers the road. But it still requires an award within that range. With the range. You're pointing to the statutory range. It's defeating that range. It's defeating the purpose of deterrence. And also it's requiring, as I said briefly, the additional notice and different efforts behind those enumerated in the Act for enforcement. I see my time's up. Thank you. Thank you, Counsel. Mr. Hastings.  EIG is asking this court to adopt a rule of law that a copyright owner has no obligation to act reasonably to avoid violations and infringements that can be avoided even when the copyright owner knows the violations are occurring. I think the court already picked up on this, but EIG is not challenging the jury instructions. They also have not challenged the sufficiency of the evidence to support the jury's findings that if they had acted reasonably, almost all of these violations would have been avoided. But didn't the Supreme Court itself and Petrella say that the victim can do nothing and wait to see? No, Your Honor. Petrella's definitely an important case. However, it addresses a specific issue, which is when you have a laches argument, which laches has always been a common law or equitable gap filler when there's no limitations. If Congress expressly acts on limitations, the gap filler goes away. But the reason Petrella is still important is it recognizes that other doctrines still apply, equitable estoppel, unobtrusive. I think their point about the statute is the 504 statute of limitations means they won't, you can't have someone sitting on their rights very long unless there is, as the jury found here, concealment that tolls that statute. And the further protection that infringers like your client get is they get notice. But the argument here would be that they have to get a lot more than the notice the statute gives them. Your Honor, that is not the argument here. The argument here is that the common law doctrine of mitigation, which applies in a wide variety of contexts, applies to copyright cases, too. Well, but we've described it, cases that both parties have cited, Tennessee Valley, as something that occurs after the infringement. That's right, Your Honor. Okay. But here, this, these, all these, these are separate infringements, each one. It's not a single course of conduct. And therefore, wouldn't your be — your suggestion is to flip it and say that they had some duty before each incident occurred to prevent it? Not exactly, Your Honor. And I'd like to explain this. Yeah. Because this is very — I mean, this gets to the heart of the issue. Mitigation is not triggered until there has been a violation, damages, someone knows that something's occurring. I agree. January 3, 2007, the jury says that's — as of that point, the duty was triggered based on their findings. Once the duty's triggered, though, this Court's pattern charge on mitigation is correct. You not only have the obligation to minimize the damage that's already occurred, you have the obligation to avoid what hasn't occurred yet. So let me give an example from this Court's real estate management case, cited in our brief. It's a hurricane damage to a roof situation. Hurricane does damage to the roof. Clearly, there's a covered insurance event in that case. What the Court went on to say is, even though there's been this covered event, the homeowner can't sit back and let other covered events occur afterwards. More rain, more damage to the inside of the home. More consequential damages from the original incident or totally separate next storm comes? They have — Separate from the next storm, the next month, the next year. You can't just sit on your rights when you've had harm. You have to protect and act reasonably on the duty to mitigate. It not only means what has happened already, but when you can avoid what's coming, such as in the storm example, because the next storm is going to come. What would help me in the copyright context is if you could point to your best authority. Specifically, do you think any of the district court opinions cited by this district court elaborate any of this argument? And, Your Honor, this is clearly an issue of first impression. We agree with the cases that Judge Lake cited. We also acknowledge that when you work through all those district court cases, there's not a whole lot of guidance one way or the other, because this is an issue of first impression that the courts haven't addressed. You know, you've both cited, I think, certainly looked at NMR. Does NMR ever articulate this? Does any — no? No, Your Honor. NMR does not have a discussion of this topic at all. And so what you have in this circumstance is a doctrine that, if you step back from the copyright context for a second, that applies almost always. I mean, there might be an exception, but I'm not aware of when there's an exception to the duty to mitigate. And so the question is, does the copyright laws trump that? And Petrella is a great example to show that it doesn't — copyright laws don't automatically trump other doctrines. So here's — I'm tracking. Here's what they say about that. They say the inconsistent — just as in Petrella, the inconsistency was a three-year window with latches, right? Here, the inconsistency with mitigation is the statutory range. Every infringement, got to be whatever it is, 750,000 to 150,000, unless it's innocent owner — innocent infringer. So what's your response to that? There's no inconsistency. So let me talk about two points that are very important here. First, the statute, then deterrence. First, on the statute itself, there is a range that the jury had to find for each copyright violation. Had to find. Yes. It's a — this jury, if you read the jury charge, they said — and picked a number within the range. Yeah. If you read the closing arguments from my co-counsel, we told the jury, you have to pick a number in the range. That you have to pick a number in the range. That doesn't trump the avoidance defenses. So just because — let's use an example of an unclean hands case, because I think all the parties in this case acknowledge unclean hands applies in the appropriate case. If the jury found 10,000 copyright violations, but also finds the unclean hands doctrine applies, that precludes recovery, period. It doesn't lower recovery to the statutory range. It says, even though there's been a violation, you can't recover for it. So unclean hands, you can end up with a take-nothing verdict. You can get the same result on an applied license. There's a lot equitable estoppel. It's the same thing on an avoidance defense. The argument that EIG keeps pressing is that the statutory range is critically important for deterrence. Well, I'm going to start by saying there's an awful lot of deterrence in this judgment already, because my client has a $3.2 million judgment against it, after spending four-plus million dollars in legal fees over five years. No one's going to look at this case and miss the fact of what happened. But as far as deterrence itself goes, EIG's argument is the opposite of deterrence. They're not trying to stop violations. What they want to say is they have, as I started this argument, no duty to act even after catching us. Not to stop avoidance. They want to capitalize on the failure to avoid. They want to capitalize on the lack of deterrence to make a lot of money. The design basics — Is your argument there — is your argument on sort of they have the duty to catch you? Is their argument — is that argument inconsistent with the jury finding that there was fraudulent concealment? Yes, Your Honor. And first, our argument is not that they had the duty to catch us. We are not arguing for a broad general duty out there that every copyright owner must go catch all violators. We have a fact pattern where they did catch us. They knew what happened. The jury said they knew what happened, which that's what triggers the duty to mitigate. And once they had caught us, they had an obligation to act reasonably. One important fact I don't think is highlighted enough in the brief is not only on January 3, 2007, did the red flag go all the way to upper management. Peter Buttrick at EIG said he was going to call Jim Baker to discuss this. Call the very guy who, once he heard in 2014 what happened, that this whole thing stopped. He never did it. They decided not to follow up and try to take action to stop this. So we have a situation, and as far as broad duties, EIG wants to make it sound like we're asking for a broad change of law. We're not. They're the one asking for the broad change of law because they want to say a copyright owner can catch someone, know it's occurring, and instead of doing something about it, sit back and think, this is great because I'm at least getting $750 a day, and I might be getting $150,000. Could you address? I'm sure I'm remembering, but I can't quote it verbatim. In the Supreme Court's decision, they said that the copyright owner can wait. Do you remember that language? The worth your candle quote, Your Honor. Pardon me? The worth your candle quote, I think, is what you're getting at in the Petrella case. That may well be it. It's the language that's sort of, you don't, you can do nothing, you can wait. And the protection that a client like yours has that's admitting it was a willful infringer is, well, you won't be able to get damages back beyond the statute of limitations. As I said, unless you conceal and toll it, and they will have to have notified your client. Your client's got, every time this newsletter comes in, don't pass this on, don't share it. So how does it redound backwards against the victim? In Your Honor, to directly address what the Petrella quote is about, is about latches and a delay as a legal bar to filing a lawsuit, which is completely different than the obligation to act reasonably. We're not saying EIG had to file a lawsuit on January 3, 2007. It's not just a delay issue. They had to act reasonably. And in Petrella, Justice Ginsburg's opinion continues, after saying latches is not appropriate, her opinion continues by discussing damages and recovery, the ability to discover profits. And she even acknowledges that the very delay that can't give rise to a latches defense can be considered informing the appropriate remedy. The opinion also recognizes that equitable estoppel, for example, can still apply and completely cut off the ability to get recovery. So Petrella is a decision about latches. I'd like to- The instructions, the court did say at some point in deliberations, this is for me to decide, a question of law. And yet the jury was told to make its own finding as to due diligence. The jury was asked to make the factual findings on what could have been avoided if reasonable diligence had been applied. And then the court instructed, I believe correctly, that the determination of how this all fits together is for the court, which brings me right back to part of Judge Duncan's question that I don't think I answered, which is the argument that is there an inconsistency in the instructions? There's not. And if there was, this court's precedent, the Walmart v. Carr case, for example, would say inconsistencies in a judgment would be for the district judge to resolve. It's not even being challenged as inconsistent on appeal, because they're not challenged in the jury instructions. We have a situation, and I had — I wanted to flag the pages, because I think this is telling. Everyone in this case knew what this jury instruction was going to mean. I think, Judge Duncan, I agree with your reading of the jury note, but I also understand why it's not 100 percent clear. In the jury charge conference, before this instruction was even given to the jury, EIG, in connection with their objections, so I want to be fair in the context, was telling the court, in other words, they want a question, talking about my client, that says, did you fail to mitigate yes or no? If the answer is yes, then we get nothing. That's what EIG's understanding of the instructions were going to be before it happened, and, of course, they objected. As soon — that's on page 13-306 of the record, by the way. As soon as the jury came back and went back to the deliberation room, one of Judge Duncan, he knew exactly what the verdict meant. And during closing arguments, my co-counsel — this is on pages 13-390 and 13-394 — told the jury, you have to award a statutory range for the violations, but then you're going to get asked questions that allow you to identify the violations for which no number or no recovery should occur. So the jury was asked, what's the range, what's the total number of violations, and then how many should have been avoided? We have both parties and the court all understood what these instructions meant, which I think is consistent with what the jury note said. So I don't think we have any inconsistency here, and everyone understood what it meant. The only argument for the court today is now the pure legal challenge. Does this doctrine apply? What's your best authority for your statement in the brief that the purpose of the Copyright Act is primarily remedial? I would cite the — I believe the L.A. Westerman case is a good example. And Your Honor, the statutory damage concept in the copyright laws, believe it or not, goes back to, I think, 1790. The Copyright Act was one of the first statutes enacted by Congress after the Constitution. And it goes back to President Washington. There's some great history on this. But that statutory number started as far back as then, and the Supreme Court has commented on the purposes several times, recognizing it's primarily remedial. But if it does have a deterrence purpose, copyright law certainly has a deterrence purpose. I don't want to suggest otherwise. Deterrence is not furthered by allowing a party to sit back and intentionally let violations occur. Deterrence is furthered by making the violator pay for what they got caught here by client is paying $3.2 million under this judgment. That's a lot of deterrence. But deterring violations also includes not letting and profiting by just sitting back and let them go forward. EIG's rule of law — just put it in context, because what they're really asking for is a rule of law. If, instead of this fact pattern, the facts were changed a little bit, and a subscriber received oil daily on a daily basis, photocopied it, and set up, say, the Houston Energy Corridor, set up a newsstand to sell it to whoever wanted to buy it every day, okay, that's a clear copyright violation, and that should be stopped and deterred. Under EIG's theory, if EIG was aware of that, and say they saw it 100 days in a row, and just, instead of stopping and saying anything, just kind of smiled and said, this is great. I now have a marketing arm, folks who are out there selling my work for me, and at the end of the day, these people are willfully copying. I get to sue them for $150,000 a day. Under EIG's model, if that occurs 100 days in a row and they know about it, well, their model is I only have two years and 256 more days to wait for this to accumulate. That can't be a good rule of law. Well, it's not for us to make. Not deterrence. But it's not for us to decide good, and I'm not sure I agree that it isn't good. If otherwise, the opposite rule is what appears to happen here. Ms. Lerma, when she gets the slightly inquiring call, sends an email to the offender, partner Baker, and says, how are we going to do this better? Let's switch it to PDFs. So the rule of law that says, well, they can't recover now, encourages people to try to obfuscate and then cheat. Your Honor, and from a factual standpoint, I would ask the Court to look back at January 3, 2007, because that's the basis of the jury's verdict. But what we have there is an email from Lerma to Baker. That's primarily the evidence to suggest EIG somehow should have known. And it's really, it's a rhetorical question. She's saying, how are we going to be able to do this better? And that's when they come up with a PDF scheme. Not in January 3, 2007. Oh, really? Let me walk through the evidence on January 3, 2007. Okay. First, it starts with the email between Lerma and Jim Baker, talking about Ron, who is not a subscriber. Right. That email gets forwarded on to Deborah Brown at EIG. She testified under oath that it was a red flag. She sent it to upper management. So they caught it. It's not an ambiguous statement. EIG's argument at trial was, this is ambiguous. It got sent up the chain of command to upper management, which was Deborah Brown's words. It went to Mr. Hoff. It went to Peter Buttrick, who is a salesperson. It went to Jimmy Ramirez. Jimmy Ramirez says, I'll handle this. He doesn't, there's no evidence he did anything. Peter Buttrick says, I'll deal with this. He called. They didn't miss this. He called. He talked to Ms. Lerma. He sold him an additional publication. Okay. And she testified there was no discussion of this severe problem. Peter Buttrick didn't testify at trial. He didn't come to explain it, a contrary version of the story. Peter Buttrick also told his folks internally, I'm gonna talk to Jim Baker, which would have been a great thing to do, because Jim Baker's the one who had the subscription. He's not the assistant. He is the decision maker. He is the boss. He's the person on the stand who testified in a very emotional manner about what a mistake he made. He offered to, to resign his job at a very, very lucrative job because he was embarrassed about what happened. But what happens is, Peter Buttrick says, I'm gonna deal with this. And he doesn't. Jim Baker testified, no one ever contacted him, the subscription holder, until 2014. Does the record show how many subscribers EIG has? Your Honor, I, I don't know the exact number. I'm sure it's in the record somewhere. However, keep this in mind, there's communications going on back and forth between these parties. In fact, there are multiple times where there's communications between these parties of the Debra Lerma and Diane Brown, Diana Debra Brown, I'm sorry. Saying, we didn't receive our publication today. These people knew exactly who they were. It's a complicated fact story. I'm just warning, red flag goes up, they say stop it. Generally, right away you stop, we just get the back payments. But then, time goes on, we have the one, two, three fraud. And then finally, you've got the Pope email, which says, we're just, we're, we're really now doing it in a much more clandestine way. In your honor, the rule of law that EIG asked for is to say, none of that matters, we get to sit back and recover. The position we're advocating is, when there's been a violation and the duty to mitigate has been triggered, we're not suggesting they had some duty to come find us. They found, they knew us. When that happens, on facts like this, the jury gets to answer the question of, was the conduct reasonable? They get to, they get to evaluate my client's conduct. With your time running out, since you've admitted that's an issue of first impression, there isn't really any treatise or case law authority for this complete bar. Would we be creating a split with the Tenth Circuit? Opposing counsel said at the beginning, the Tenth Circuit's already decided this. No, your honor. The Tenth Circuit decides the case about ERISA, and it was a pure penalty statute. If I'm remembering the case correctly, it's the kind of statute that says, if you do X, you're going to get fined so much a day. It has nothing to do with actual damages or recovery. This is an issue of first impression. Your honor, I see my time's out, so I'll just finish. Petrella is important. It doesn't directly answer the question, but it acknowledges that just because Congress has the Copyright Act, and no matter what's in there, if there's no express conflict, it's not displacing everything else that would ordinarily apply. Your honors, thank you very much. Thank you very much, counsel. Rebuttal? Your honor, if it pleases the Court, I just want to address quickly the exchange in 2007. After Peter Buttrick reached out to Ms. Larma, there was an exchange, an email to Mr. Baker, and Mr. Baker and Mrs. Larma referenced, and Buttrick did say that EIT is starting to enforce these copyright violations. And Baker responded to Ms. Larma by saying, simply, just tell them I'm the only one who receives the publication. So right there in that point, in that instance, they began concealing. And the argument that plaintiffs could have reached Mr. Baker, and they do try to reach Mr. Baker, but these are management executives that don't really want to hear. Elaborate it. I would think that the factual dispute was presented to the jury. So rather than that, what's why isn't he right, even as an issue of first impression, that we should cabin Petrella and apply a mitigation theory that's pretty universally acknowledged to the Copyright Act? Yes. Well, first of all, scholars have commented, Patry, not Nimmer, has specifically stated that where a plaintiff seeks only statutory damage, such a defense is meritless and should be struck, since there's no requirement that statutory damages be pegged to actual damages. They continue to cite also contrary malleable media decisions. In addition, in the Northern District, you asked earlier if there's anything in this district. Judge Fitzwater actually said in the JJ Sports Production versus Willie Ray's private room, that the mitigation defense is insufficient as a matter of law in a copyright case where plaintiffs sought statutory damages. But turning to the interpretation of Petrella, I think Petrella is on all fours with this case. Petrella does talk, and they enumerated, certain equitable doctrines that may apply. But every one of those doctrines, they all go to liability. They all go to acts of the plaintiff, such as the implied license, where they created a license that was inherent with the work as such for the defendant to understand that their use was permissible within the purchase. They're all doctrines that don't conflict with the law. In commenting on whether or not there's this difference between equitable doctrines that can apply and ones that cannot, Petrella states in discussing tolling, the very situation here, tolling which lengthens the time for commencing a civil action in appropriate circumstances, applies when there's a statute of limitations, in effect, a rule interpreting tied to that limit. Latches, in contrast, originally served as a guide when no statute of limitation control claimed. It can scarcely be described, and it continues as something that doesn't defeat the statute. But if your emphasis is that Petrella's on all fours, the literal reading of Petrella would say that the accrual moment is the incident of injury. And then they would get a lot of protection, right? Well, Petrella actually puts a footnote in, a footnote four in Petrella talking about what accrual means. And there is largely the same treatment, and within this Fifth Circuit, that accrual is not when the injury occurred, but when the plaintiff knew or should have known. And in this case, as the jury found, there was an event that the defendant got to argue that we should have known. And the jury found that they fraudulently concealed that, which told the statute of limitations. And that issue is not in front of us, and no courts disagreed with that as the intention with Petrella? No. Okay. So I believe that that is controlling. Petrella does resolve the issue. And then last, before I return my time, unless there's any further questions, you asked about any authority that indicated about the deterrent component of statutory damages. And I just want to remind the Court that that has been long held as a case. And pointing to the 1952 case of F.W. Woolworth versus Contemporary Arts. The statutory rule formulated after long experience not merely compels restitution of profits and reputation for injury, but also is designed to discourage wrongful conduct. The legislative history also discusses the deterrent purpose and the need of the deterrent purpose in the statute. And by allowing mitigation to not only completely defeat the requirements of 504, finding an award within a specified statutory range, that even an innocent infringer, not in a circumstance where this is an admitted willful infringement, must be found liable for damages. But there's also deterrent components, and there are arguments meaningfully at, which will impact the entire industry of parties that prepare copyrighted works. This requirement beyond putting notice that is supposed to protect the copyright holder and advise and put on notice the defendant that we have a copyright in this work. Final question, your red light's on. Am I remembering language correct from the Supreme Court, and is it relevant or not? I thought there was fairly explicit statement that copyright owners can wait. Is that- Absolutely. Judge Ginsburg said unequivocally, there's nothing foretold, it's not an exact quote, your honor, but for a copyright holder to wait until the litigation is worth the candle. And it comes with a consequence. No, that's why it's worth the candle, that was your reference. And it comes to you quickly with a consequence of limiting. If you, there's a cruel and you wait, you're limited to the statute of limitations period. Well, I'm glad you qualify. I mean, the context of that is somebody who wants to sue over a copyright infringement for a film, Raging Bull. Yes. And the idea was, well, can she wait until Raging Bull's out of the red and in the black and they're marketing on DVD, right? And the idea is, well, yeah, she can because the three-year statute of limitations takes care of that problem, right? That's the context. It doesn't bless every single kind of pre-litigation conduct. I mean, we shouldn't, I don't read it, I don't read it that broadly. But that fits right on par with what their mitigation argument is. And I just say the record showed at no point, at no point other than attorney argument, did anyone at EIG have knowledge and a belief that this infringement was occurring and that they were strategically waiting. There's no factual support in the record other than an attorney argument. Well, but the jury made a finding that although there was concealment, your client had a, should have found out about it. And it did. And I think that's countered by their argument that that knowledge is told by a fraudulent concealment. Okay. Thank you. Thank you. Thank you, counsel. Thank you both. Case is submitted.